IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


**ALVIN VALENZUELA,**

    Petitioner,

v.                                              No. CV 10-1127 MCA/GBW

**STEVE SILVERSMITH**, Warden,
McKinley County Detention Center;
**FRANK HECHT,** Corrections Administrator,
Tohono O'odham Nation,

    Respondents.


**RESPONDENT HECHT'S RESPONSE TO PETITIONER VALENZUELA'S
SUPPLEMENTAL BRIEF ON THE ISSUE OF MOOTNESS AND COLLATERAL
CONSEQUENCES**

      Pursuant to this Court's order dated April 5, 2011 (Doc. 24) Frank Hecht, by his attorneys, Laura Berglan and Doreen McPaul submit their brief in response to Petitioner's Supplemental Brief on the Issue of Mootness and Collateral Consequences.

**INTRODUCTION**

      Petitioner applied to this Court for a writ of habeas corpus on November 23, 2010. (Doc. 1). At the time of Petitioner's filing, Petitioner had approximately four months remaining of his nearly three and one-half year sentence. Petitioner was in custody at the time of filing. On February 16, 2011, pursuant to Respondents' unopposed Motion to Dismiss, this Court issued a Report and Recommendation recommending that this case be dismissed due to Petitioner's failure to exhaust his tribal remedies. (Doc. 18). While awaiting a ruling from Judge Armijo on the Report and Recommendation, on March 11, 2011, Petitioner's sentence expired and he was unconditionally released from the Gallup-McKinley County Detention Center. (Doc. 22).

## STANDARD OF REVIEW

Whether a tribal court's action violated a defendant's rights under the Indian Civil Rights Act is determined *de novo*. *Fendler v. Goldsmith*, 728 F.2d 1181, 1190 (9th Cir. 1984).

## ARGUMENT

### I.  THIS CASE IS MOOT.

Petitioner's unconditional release from custody on March 11, 2011, causes this petition to be moot because it no longer presents a case or controversy under Article III, § 2, of the Constitution. "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate … The parties must continue to have a 'personal stake in the outcome' of the lawsuit." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-478 (1990). Throughout the litigation, the petitioner "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis* at 477.  Mootness deprives a court of jurisdiction. *New Mexico Env't Dept. v. Foulston,* 4 F.3d 887, 888 (10th Cir. 1993), *cert. denied,* 511 U.S. 1005 (1994).  As discussed more fully below, Petitioner no longer has a personal stake in the outcome of the case and this case must be dismissed for lack of jurisdiction.

### II.  PETITIONER DOES NOT QUALIFY FOR EITHER EXCEPTION TO MOOTNESS.

The Supreme Court has set out two exceptions to mootness when a petitioner in a habeas action has been unconditionally released from custody.  First, is that petitioner could not have brought his case to court for review prior to the expiration of his sentence. *Sibron v. State of New York*, 392 U.S. 40, 51 (1968) (citing *St. Pierre v. United States,* 319 U.S. 41, 43 (1943)). *See also Carafas v. LaValle,* 391 U.S. 234, 240 (1968) (the Court held that petitioner "should not be thwarted now and required to bear the consequences of assertedly unlawful conviction simply

because the path had been so long that he has served his sentence" when petitioner had been challenging his conviction for eight years.) The second exception to mootness is when the petitioner can show the existence of continuing collateral consequences as a result of his conviction. *Sibron v. State of New York*, 392 U.S. 40, 51 (1968) (citing *St. Pierre v. United States,* 319 U.S. 41, 43 (1943)).

### A. Petitioner's delay in filing caused the mootness.

Petitioner could have, but failed to file the instant action in a timely manner which would have prevented mootness. Petitioner was convicted and incarcerated on July 25, 2008. Petitioner filed the instant action on November 23, 2010, approximately four months before the end of his nearly three and one-half year sentence. The fact that Petitioner was unconditionally released during the pendency of his case is attributable to his delay, not the court system's or Respondents' delay. Petitioner could have easily brought his case before this Court for review prior to the expiration of his sentence, therefore Petitioner does not meet this exception to the mootness doctrine.

### B. Petitioner does not suffer any collateral consequences of his conviction.

The second exception to mootness is when the petitioner can show the existence of continuing collateral consequences as a result of his conviction. *Sibron v. State of New York*, 392 U.S. 40, 51 (1968) (citing *St. Pierre v. United States,* 319 U.S. 41, 43 (1943)). Collateral consequences "encompass a wide array of sanctions – termed civil disabilities – that attach to, but are legally separate from the criminal sentence." Michael Pinard, *Offender Reentry and the Collateral Consequences of Criminal Convictions: An Introduction*, 30 N.Y.U. Rev. L. & Soc. Change 585, 586 (2006).

"Collateral review of a final judgment is not an endeavor to be undertaken lightly. It is not warranted absent a showing that the complainant suffers actual harm from the judgment that he seeks to avoid." *Lane v. Williams*, 455 U.S. 624, 632-33 n. 13 (1982). Petitioner fails to cite any specific statutory collateral consequences deriving from his conviction that would allow this Court to maintain the instant case. In contrast, the Court in *Carafas* found that the petitioner in that case suffered from a number of collateral consequences. "In consequence of his conviction, he cannot engage in certain businesses; he cannot serve as an official of a labor union for a specified period of time; he cannot vote in any election held in New York State; he cannot serve as a juror." *Carafas v. LaValle* at 238. The Court in *Carafas* indicated that there were additional collateral consequences that a petitioner could suffer from, citing a Virginia Law Review Note. The Note refers to "official disabilities which cannot be overcome by good works or the passage of time" incurred by convicted felons. C.J.M., Note, *Civil Disabilities of Felons*, 53 Va. L. Rev. 403, 403 (1967). The Note goes on to discuss a wide variety of collateral consequences that a convicted felon may face, none of which Petitioner faces.

> In most states, a felony conviction is a ground for permanent disenfranchisement. Legislatures have also denied public office, positions of public trust, and jury service to anyone with such a record. Moreover, statutes regulating professions or occupations may prevent the felon from qualifying as a chiropodist, engineer, liquor salesman, physician, private detective, real estate agent, or veterinarian. Other statutes give licensing authorities the discretion to exclude felons from architecture, barbering, nursing and pharmacology. Furthermore, a felon cannot enjoy a career in the Army or Air Force….

*Id.* at 404.

As discussed below, Petitioner has not and cannot allege that he has suffered any collateral consequence as interpreted by *Carafas*.

1. <u>"Loss of Liberty" is not a collateral consequence</u>.

Petitioner first alleges that he suffered an "actual injury, namely the continued loss of his liberty" and that this is somehow a collateral consequence. *Brief* at 9 (Doc. 26). Petitioner cites nothing in support of his position that this is a collateral consequence of his conviction. No court has found that alleged "loss of liberty" is a collateral consequence. Collateral consequences "are considered to be the indirect, rather than the direct, consequences that flow from a criminal conviction." Michael Pinard, *Offender Reentry and the Collateral Consequences of Criminal Convictions: An Introduction*, 30 N.Y.U. Rev. L. & Soc. Change at 586 (2006). "While direct consequences include the length of the jail or prison sentence the defendant receives … collateral consequences encompass a wide array of sanctions – termed civil disabilities – that attach to, but are legally separate from the criminal sentence." *Ibid.* Petitioner's sentence is clearly the consequence of his behavior, not a collateral consequence, thus, Petitioner's contention that "loss of liberty" is a collateral consequence should be disregarded.

2. <u>Collateral consequences do not attach to tribal misdemeanor convictions</u>.

Petitioner alleges as a collateral consequence that the tribal conviction could be used to enhance the sentences imposed on Petitioner for any subsequent crimes which he may commit or impeach his future testimony. *Brief* at 9 (Doc. 26). As discussed below, since the conviction is one consisting of misdemeanors, these collateral consequences do not attach and this case must be dismissed as moot.

Tribal convictions are misdemeanor convictions. The Indian Civil Rights Act provides that a tribe cannot impose more than one year incarceration, a $5,000.00 fine, or both for any one offense. 25 U.S.C. § 1302(7). Petitioner was convicted of four counts, namely Count 1 Conspiracy, 180 days detention; Count 2 Aggravated Assault, 360 days detention; Count 3

5

Aggravated Assault, 360 days detention; and Count 4 Misuse of a Weapon, 360 days detention. Since each of these offenses are limited by law to less than one year of detention, Petitioner was convicted of four misdemeanors.

"As a general matter, whether misdemeanors impose collateral consequences, and thereby enable released offenders to maintain habeas petitions, is a case-by-case inquiry. Specifically, the court must examine whether a state or professional body will permanently penalize the misdemeanant, such as precluding him from engaging in certain professions." In contrast to a felony conviction, a misdemeanor conviction "carries no collateral legal consequences that he will suffer from or otherwise be exposed to." *United States v. Hill*, 171 F.Supp.2d 1032, 1038 (D.S.D. 2001) (citing *Broughton v. North Carolina*, 717 F.2d 147, 149 (4th Circuit 1983) (misdemeanor contempt conviction creates no lingering consequences making released petitioner's habeas petition moot), *cert. denied*, 466 U.S. 940 (1984)). Although the 10th Circuit Court of Appeals has recognized that possible collateral consequences **could** flow from a misdemeanor conviction, Petitioner has failed to adequately allege any in the instant case. *Oyler v. Allenbrand*, 23 F.3d 292, 294 (10th Cir. 1994).

> a. *Tribal misdemeanor convictions cannot be used to impeach future testimony.*

As to Petitioner's allegation that his conviction could be used to impeach future testimony, Petitioner cites no authority for this proposition. Since these are misdemeanor crimes that do not "involve dishonesty or false statement," these convictions could not be used to impeach future testimony. Fed. R. Evid. 609(a) (crime can be used to impeach witness, if probative value outweighs prejudicial effect, if the crime "was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted."); N.

M. R. Evid. 11-609 (same); Ariz. R. Evid. 609 (same). Petitioner's contention that impeachment of future testimony is a collateral consequence must be disregarded.

        *b. Potential future sentence enhancement is not a collateral consequence.*

  Even if Petitioner's tribal conviction could be used to enhance his sentence if he is convicted of another crime in the future, such does not render his habeas petition justiciable. *Spencer v. Kemna*, 523 U.S. 1, 15 (1998). In *Spencer*, the same proffered collateral consequence was rejected by the Supreme Court because the possibility of a sentence enhancement was something that "was contingent upon [the defendants'] violating the law, being caught and convicted," and the defendants themselves were "able – and indeed required by law – to prevent such possibility from occurring." 523 U.S. at 15 (quoting *Lane v. Williams*, 455 U.S. at 632, n. 13). Any proposed collateral consequence of a future sentence enhancement Petitioner may have, by reason of his tribal conviction, is likewise contingent upon him committing another crime, which he has the sole ability to prevent. *Accord United States v. Hill*, 171 F.Supp.2d 1032, 1038 (D.S.D. 2001) ("At the outset, whether or not Hill's [misdemeanor] contempt conviction could be used to enhance his sentence if he is convicted of another crime in the future does not make Hill's Motion, or the claims he raises therein, justiciable.") (citing *Spencer*, 523 U.S. at 15.) In *Hill*, the district court dismissed the petition as moot, finding that Hill's conviction of a misdemeanor offense did "not cause him the kinds of concrete disadvantages or disabilities that have been recognized as being sufficiently adverse collateral consequences to make his case justiciable, such as depriving him the right to vote, hold office, serve on a jury or engage in certain businesses." *Ibid.* (citing *Spencer*, 523 U.S. at 8).

  Additionally, Petitioner fails to identify any specific statutory authority that would allow Petitioner's tribal court conviction to be used to enhance any future sentence, should he choose

7

to commit additional future crimes. For example, the Federal Sentencing Guidelines explicitly forbid the use of tribal convictions to determine the criminal history category. U.S.S.G. § 4A1.1(b) cmt. n. 2. Petitioner has not sufficiently alleged that his misdemeanor tribal convictions could potentially enhance a future sentence. To sustain his case on such a speculative allegation goes against Supreme Court holdings to the contrary.

In short, Petitioner's situation is simply not analogous to the Petitioner's position in *Carafas* as is alleged by Petitioner. *Brief* at 7 (Doc. 26). Petitioner Carafas, as a consequence of his **felony** conviction, could not engage in certain businesses, could not serve as an official of a labor union for a period of time, could not vote in any election in New York State, and could not serve as a juror. *Carafas*. at 237. Petitioner cannot prove any grounds for maintaining a habeas action based on collateral consequences. Petitioner is still able to vote, engage in business, and hold public office. "[T]he 'collateral consequences' which concerned the Court in Carafas were of a substantial nature, consisting of deprivation of a person's basic rights, the right to work in certain professions, the right to vote and the right to serve on a jury." *Bjerkan v. United States*, 529 F.2d 125, 126-127 (7th Cir. 1975); *See also Wade v. Carsley*, 433 F.2d 68 (5th Cir. 1970) (Court found no collateral consequences flowing from misdemeanor conviction mooting the appeal). Petitioner has not alleged these types of consequences and this case must be dismissed as moot.

### III.    CONCLUSION

Petitioner simply does not currently meet the requirements for habeas corpus jurisdiction or any of the exceptions therein. This Court must dismiss this case for lack of jurisdiction. In the alternative, Respondent Hecht urges the Court to dismiss this matter in accordance with its

8

Report and Recommendations issued February 16, 2011 (Doc. 18), for Petitioner's failure to exhaust his tribal remedies.

Respectfully submitted this 2nd day of June, 2011.

**TOHONO O'ODHAM NATION**
**OFFICE OF ATTORNEY GENERAL**

By: */s/ Laura Berglan*
Laura Berglan *Pro Hac Vice*
Doreen N. McPaul
Assistant Attorney General
P.O. Box 830
Sells, Arizona 85634
Telephone: 520-383-3410
Fax: 520-383-2689
laura.berglan@tonation-nsn.gov

*Attorneys for Respondent Frank Hecht*

I hereby certify that on the 2nd day of June, 2011, I filed
the foregoing electronically through the CM/ECF system, which
caused the following parties or counsel to be served by electronic
means, as more fully reflected on the Notice of Electronic Filing:

Sherrie L. Harris
Barbara Creel, Attorney for Petitioner
creel@law.unm.edu

 */s/ Laura Berglan*