IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALVIN VALENZUELA,

        Petitioner,

v.                                                 No. CV 10-1127 MCA/GBW

STEVE SILVERSMITH, DEPUTY WARDEN,
McKinley County Detention Center, and
FRANK HECHT, Corrections Administrator,
Tohono O'odham Nation,

        Respondents.

### PETITIONER VALENZUELA'S REPLY TO RESPONDENT HECHT'S RESPONSE ON THE ISSUE OF MOOTNESS AND COLLATERAL CONSEQUENCES

      Pursuant to this Court's Order on June 10, 2011 (*Doc.* 31), the Petitioner, Alvin Valenzuela, through his Attorneys, Barbara L. Creel, Supervising Attorney, and Daniel B. Snyder, Clinical Law Student, of the Southwest Indian Law Clinic, University of New Mexico School of Law Clinical Law Programs appearing pursuant to D.N.M.LR-Civ. 83.11, submits this Reply brief to Respondent Hecht's Response to Petitioner Valenzuela's Supplemental Brief on the Issue of Mootness and Collateral Consequences filed on June 2, 2011 (*Doc. 28*).

      This Court should find that Petitioner Valenzuela's meritorious claims are not moot in general because there is a presumption of collateral consequences when inmates challenge the validity of their convictions, and further they are not moot to either Respondent, specifically. This Court should review Mr. Valenzuela's meritorious claims presented in his Section 1303 petition because this case is not moot and collateral consequences do exist for the following reasons:

## RELEVANT PROCEDURAL HISTORY

Based on the release of Mr. Valenzuela, this Court ordered a Briefing Schedule on April 05, 2011, as to "the issue of whether Petitioner's claims are rendered moot as to Respondent Silversmith (the Warden), and separately, as to Respondent Hecht (the Tribe)," setting forth deadlines for the pleadings. *Doc. 24*. This Court ordered Mr. Valenzuela to file a brief within thirty (30) days of this Order, due on or before May 5, 2011. *Id.* Respondents were to file responses thirty (30) days following the date Petitioner Valenzuela files a brief. *Id*. No date for a Reply Brief was set in the Order.

In accordance with the briefing schedule, Mr. Valenzuela timely filed his Supplemental Brief on the Issue of Mootness and Collateral Consequences on May 04, 2011. *Doc. 26*. Respondent Silversmith filed a timely Response on May 25, 2011, and Respondent Hecht filed a timely Response on June 02, 2011. *Docs. 27 & 28*, respectively.

Mr. Valenzuela requested Leave to Reply on June 09, 2011, because a Reply was not ordered on the Briefing Schedule. *Doc. 30*. This Court granted leave to reply on June 10, 2011, with the Replies due no later than June 24, 2011. *Doc. 31*. Mr. Valenzuela's Reply to Respondent Hecht follows.

## SUMMARY OF ARGUMENT

Mr. Valenzuela's claims are not moot and Respondent Hecht's argument should be rejected for two reasons: (1) there still exists an actual controversy, and (2) there is a legally cognizable remedy that this Court can provide. Applying the correct standards and habeas case law to the facts of this case, an actual controversy exists as Mr. Valenzuela suffered an illegal conviction, sentence and detainment. There is a remedy in that this Court can review the claims and render a favorable decision on the illegal sentence and underlying tribal court process. This

is required because without a review and decision on the illegality of the underlying conviction and sentence, Mr. Valenzuela suffers collateral consequences without redress.

Respondent Hecht is incorrect in their characterization of collateral consequences and the applicable law regarding collateral consequences when Mr. Valenzuela is challenging an invalid conviction. The case law on collateral consequences makes it clear that all criminal convictions are presumed to have collateral consequences. Because Mr. Valenzuela is challenging the validity of his conviction and sentence, collateral consequences are presumed present.

For purposes of determining the existence of collateral consequences, all tribal court convictions cannot be classified as mere misdemeanors due to the statutory limitations under the Indian Civil Rights Act (ICRA). Regardless of the label the Tribe puts on the conviction, Mr. Valenzuela is subject to collateral consequences. Therefore, because specific collateral consequences exist and generally are presumed, there remains a controversy and this case is not moot.

## DISCUSSION

I. **THIS CASE IS NOT MOOT BECAUSE THERE IS AN ACTUAL CONTROVERSY AND A LEGALLY COGNIZABLE REMEDY THAT THIS COURT CAN GRANT, THIS COURT HAS JURISDICTION TO REVIEW THE MERITS OF THE 1303 PETITION.**

Contrary to Respondent Hecht's position (*Doc. 28* at 2), this case is not moot. The Tribe misunderstands and misapplies the mootness doctrine. It is a well-settled principle of Supreme Court habeas law that, "once the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application." *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). While it is true that a case or controversy must exist; Mr. Valenzuela has an actual controversy.

Mr. Valenzuela did not cause his claim to become moot, as suggested by Respondent Hecht. *Doc. 28* at 3. In the forty years since the passage of ICRA there has been very little use of federal habeas review under Section 1303. This is because ICRA does not force tribes to provide an attorney; it only provides defendants with the right to have an attorney present when appearing before Tribal Courts. Because of this, *pro se* defendants like Mr. Valenzuela are often unaware of the limits placed on Tribal Courts' abilities to sentence. Mr. Valenzuela's case demonstrates the consequence of not having an attorney because he pled guilty and agreed to an illegal sentence without counsel. Because he pled, he did not have a right to appeal. Instead, he was illegally sentenced to three years of imprisonment and sent to another state to serve his time. Only after Mr. Valenzuela was able to obtain free legal advice was he even aware that he was serving an illegal sentence and that he had the right to have his sentence reviewed. There is no way he could have brought this claim sooner. Mr. Valenzuela brought his claim while he was still incarcerated pursuant to the Tribal Court's illegal sentence and the fact that he has completed the sentence should not mean that it cannot be reviewed for the process that he was due in Tribal Court.

The case was not rendered moot merely because Mr. Valenzuela was released after serving his entire sentence. On the contrary, a controversy still exists because the Tohono O'odham Nation violated federal law by enforcing a sentence 895 days in excess of the one (1) year statutory limitation for "any one offense" under ICRA, and because the tribe violated Mr. Valenzuela's due process and right to counsel rights under ICRA and the United States Constitution. 25 U.S.C.A. § 1302 (1986), *amended by* 25 U.S.C.A. § 1302 (2010).

This court has jurisdiction for two reasons: (1) ICRA confers jurisdiction to the federal courts to review the legality of tribal court ordered detentions pursuant to 25 U.S.C. § 1303; and,

(2) Mr. Valenzuela timely filed his petition while in custody. His claims are valid and timely because he filed his Section 1303 Petition on November 23, 2010 (*Doc.* 1), while he was still "in custody." *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998). A Section 1303 Petition is timely no matter if it is filed on the first day of incarceration or on the last. Given that Mr. Valenzuela has met the "in custody" requirement, the only way his release from custody causes his Petition to become moot is if the Petition "no longer present[s] a case or controversy under Article III, § 2, of the Constitution." *Id*. This is not the case here.

As stated above an active controversy still exists and there is a legally cognizable remedy. This Court has the power to review Mr. Valenzuela's claims and can vacate Mr. Valenzuela's illegal conviction, sentence and detention. Thus, this case is not moot and this Court has subject-matter jurisdiction over the actual controversy that exists as required under Article III of the United States Constitution. *See Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983); *See also U.S. v. Hahn*, 359 F.3d 1315, 1323-24 (10th Cir. 2004) (holding that mootness was not appropriate because an actual controversy existed as to the legality of the sentence imposed under a plea agreement and voiding of the plea agreement was a legally cognizable remedy).

If the Tribe's view was accurate, a tribal court could conduct improper proceedings and sentence illegally and the defendant would have no remedy so long as he was released prior to federal court review on the merits. Such a result cannot be consistent with habeas corpus review.

## II. COLLATERAL CONSEQUENCES ALWAYS EXIST WHEN A CONVICTION IS INVALID.

Because Mr. Valenzuela is challenging his underlying conviction and sentence, collateral consequences are presumed. *Sibron v. New York*, 392 U.S. 40, 55 (1968); *Spencer v. Kemna*, 523 U.S. 1, 12 (1998); *United States v. Meyers*, 200 F.3d 715, 718 (10th Cir. 2000); *United States v.*

5

*Hensel*, No. 09-2283, 377 Fed. Appx. 748, 750 (10th Cir. May 3, 2010) (unpublished). As set forth below, the presumption of collateral consequences contradicts Respondent Hecht's assertion that it is Mr. Valenzuela's burden to show collateral consequences exist in order to prevent his claims from becoming moot, and his claim that there are no collateral consequences from tribal court convictions.

### A. Mr. Valenzuela's illegal conviction, sentence and detention attach collateral consequences that will subject him to future injury.

Because a presumption of collateral consequences exists for petitioners challenging the validity of their convictions, mootness is only available when the presumption has been overcome by the respondents or when the petitioner does not challenge the underlying conviction. *See Sibron*, 392 U.S. at 57; *Spencer*, 523 U.S. at 12; *Doc. 26* at 10. Respondent Hecht erroneously implies that Mr. Valenzuela has the burden of demonstrating the existence of sufficient collateral consequences to save the action from mootness. *Doc. 28* at 4 (citing *Lane v. Williams*, 455 U.S. 624, 632-33 n. 13 (1982)). Respondent Hecht's reliance on *Lane*, a parole case, is misplaced and a failed attempt at shifting the burden of proving the existence of collateral consequences to Mr. Valenzuela.

It is vital to the understanding of the complex collateral consequences doctrine set forth by the Supreme Court through *Carafas, Sibron, Lane and Spencer*, that the latter two cases involved habeas petitioners contending the constitutionality of parole revocations and not the legality of their convictions. *Spencer v. Kemna*, 523 U.S. 1, 12 (1998) (declining to extend from *Sibron*, the presumption of collateral consequences resulting from an invalid conviction to parole revocations). Respondent Hecht relied on the dicta following this declination in *Spencer* as authority for not recognizing the collateral consequence of future sentence enhancement. *Doc. 28* at 7. However, this reasoning is only applicable in instances where collateral consequences are

**not** presumed. *Carafas* and *Sibron* show that collateral consequences resulting from invalid convictions are always presumed present. *Spencer*, 523 U.S. at 12. Mr. Valenzuela is challenging the validity of his convictions and collateral consequences are presumed present.

As Mr. Valenzuela asserted in his Supplemental Brief (*Doc. 26* at 10), the respondents burden of asserting *no collateral consequences* is undoubtedly difficult because "most criminal convictions do in fact entail adverse collateral legal consequences." *Sibron*, 392 U.S. at 55. Respondent Hecht claims that Mr. Valenzuela "does not suffer any collateral consequences of his conviction." *Doc. 28* at 3. Even though it is not Mr. Valenzuela's burden to show collateral consequences as they are presumed because he is challenging his conviction, as proven below, his convictions attach specific and considerable collateral consequences.

**B. For purposes of determining specific collateral consequences, all tribal court convictions cannot be classified as mere misdemeanors.**

Before discussing specific collateral consequences that Mr. Valenzuela may suffer, it is necessary to appropriately characterize his convictions as they may be viewed by courts of law, employers, educational institutions, as well as the general public. Mr. Valenzuela agreed to an uncounseled plea that included two counts of Aggravated Assault, one count of Conspiracy, and one count of Misuse of a Weapon. *Doc. 1-4* at 2, Exhibit B (text of the offenses listed are in Title 7, Chapter 1, of the Tohoho O'odham Criminal Code and *available at* http://www.tolc-nsn.org/docs/Title7Ch1.pdf). While offenses with punishments limited to under a year of imprisonment are generally considered misdemeanors under State and Federal statutes, Indian Tribes are bound by a statutory limitation under ICRA, no matter the type of offense. The label of "misdemeanor" on all tribal court offenses is inappropriately used because tribes have concurrent jurisdiction to prosecute all crimes.

These tribal court convictions are not mere misdemeanors because "each of these offenses are limited by law to less than one year of detention," as alleged by Respondent Hecht. *Doc. 28* at 6. In Arizona and New Mexico, which are not bound by federal statutory limitations as to the exact length of criminal sentences as are Indian Tribes under ICRA, the crimes of Aggravated Assault and Conspiracy are not misdemeanor offenses. For example, Aggravated Assault under New Mexico and Arizona statutes is listed as a felony offense. N.M. STAT. ANN. § 30-7-4 (West 1993); ARIZ. REV. STAT. ANN. § 13-1204 (2011). Additionally, a Conspiracy offense is also a felony in both States. N.M. STAT. ANN. § 30-28-2 (West 1979); ARIZ. REV. STAT. ANN. § 13-1003 (2011). Three of the four convictions that are right now a permanent part of Mr. Valenzuela's criminal record would be felony convictions in Arizona and New Mexico.

### 1. Regardless of the characterization of tribal court offenses, misdemeanor convictions do have collateral consequences.

Although three of Mr. Valenzuela's convictions would be termed felonies in Arizona and New Mexico, if this Court deemed them as misdemeanors for a collateral consequences determination then collateral consequences still attach. The Tenth Circuit has observed that misdemeanor convictions, in addition to felony convictions, do not render a case moot. *Oyler v. Allenbrand*, 23 F.3d 292, 294 (1994) (finding jurisdiction because "possible adverse collateral consequences could flow from petitioner's conviction") (citing as persuasive *United States ex rel. Grundset v. Franzen*, 675 F.2d 870, 873 (7th Cir.1982), which presumed collateral consequences existed from a misdemeanor conviction of aggravated assault).

Misdemeanor convictions have collateral consequences on a person's ability to resume life and responsibilities after incarceration. If seeking a post-secondary education, Mr. Valenzuela may be denied admission by the majority of colleges. *See* Center for Community Alternatives, *The Use of Criminal History Records in College Admission: Reconsidered*, (2010).

Approximately 66.4% of post-secondary schools collect criminal histories, and 55% of schools collect and use criminal histories during their admission process. *Id.* at 8-9. A conviction involving violence is nearly an automatic trigger for denying admission. *Id.* at 17.

Employment barriers also exist for people with criminal histories. Criminal background checks are the second-most frequently conducted employee background checks after U.S. employment eligibility checks. Michelle Natividad Rodriguez, Maurice Emsellem, National Employment Law Project, *65 Million "Need Not Apply": The Case for Reforming Criminal Background Checks for Employment*, 1 (2011), *available at* http://www.nelp.org/page/-/65_Million_Need_Not_Apply.pdf?nocdn=1. Criminal records significantly and negatively impact hiring outcomes. Devah Pager, Bruce Western & Naomi Sugie, *Sequencing Disadvantage: Barriers to Employment Facing Young Black and White Men with Criminal Records*, 623 The Annals of the American Academy, 195, 199 (2009) (a criminal record reduces the likelihood of a callback or job offer by nearly 50 percent, even for applicants with otherwise appealing characteristics).

Moreover, private employers may be reluctant to hire an employee with a criminal history because of the risk of being held liable for negligent hiring in the event of an injury to a customer. In both New Mexico and Arizona, the states in which Mr. Valenzuela is most likely to look for work, employers have been held liable for negligent hiring simply because an employee had a criminal background. *See e.g., Lessard v. Coronado Paint & Decorating Ctr., Inc.*, 2007-NMCA-122, ¶ 36, 142 N.M. 583, 595, 168 P.3d 155, 167 (the jury decides if the employer has breached a duty when it fails to run a criminal background check; *McGuire v. Arizona Prot. Agency*, 125 Ariz. 380, 382, 609 P.2d 1080, 1082 (Ariz. Ct. App. 1980) (Employer was held liable for negligent hiring when an off-duty security alarm installer burglarized a customer's

home. "[Employer] owed a duty to plaintiff to employ a responsible and trustworthy person, without a criminal proclivity that could reasonably be determined, to install the alarm system.").

Public employment can also be denied in States that allow prior convictions to be a bar to employment. In Arizona, a person may be denied public employment "by reason of the prior conviction of a felony or misdemeanor if the offense has a reasonable relationship to the functions of the employment or occupation." ARIZ. REV. STAT. ANN. § 13-904 (2006). And, even though New Mexico offers some protection from discrimination based on criminal history in applications for public employment, it allows broad discretion to employers and licensing boards to use criminal histories to determine moral character and fitness. N.M. STAT. ANN. § 28-2-1, *et seq.* (current as 2010). With limited access to education and employment, Mr. Valenzuela may suffer collateral consequences as a direct result of his illegal convictions.

### 2. Mr. Valenzuela's illegal tribal convictions, sentences and detention could lead to future injury if used as a sentencing enhancement.

Respondent Hecht alleges that the Federal Sentencing Guidelines "explicitly forbid the use of tribal convictions to determine the criminal history category." *Doc. 28* at 8. This allegation is in error. The guidelines provide judges with explicit leniency for employing an upward departure in establishing a criminal history category when there is a showing that "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S. Sentencing Guidelines Manual § 4A1.3(a)(1) (2010).
Tribal offenses may be used for warranting an upward departure. § 4A1.3(a)(2)(A).

Federal Courts have used this leniency in the sentencing guidelines to validate using prior tribal offenses for an upward departure. Kevin K. Washburn, *Tribal Courts and Federal Sentencing*, 36 Ariz. St. L.J. 403, 436 (2004); *See e.g.*, *United States v. Lonjose*, 42 Fed. Appx.

177, 178 (10th Cir. 2002); *United States v. Preacher*, 2001 WL 1439861 (9th Cir. 2001); *Teeple v. United States*, 15 Fed. Appx. 323, 324 (6th Cir. 2001); *United States v. Antelope*, 2000 WL 967973 \*\*1 (8th Cir. 2000); *United States v. Waugh*, 207 F.3d 1098, 1102 (8th Cir. 2000); *United States v. G.L.*, 143 F.3d 1249, 1255 (9th Cir. 1998); *United States v. Juvenile PWM*, 121 F.3d 382, 384 (8th Cir. 1997); *United States v. Drapeau*, 110 F.3d 618, 620 (8th Cir. 1997); *United States v. Early*, 1996 WL 337206 (9th Cir. 1996); *United States v. Burke*, 80 F.3d 314, 316 (8th Cir. 1996); *United States v. Claymore*, 978 F.2d 421, 428 (8th Cir. 1992).

As stated in Petitioner's Supplemental Brief, Mr. Valenzuela is currently incarcerated awaiting trial in the State of Arizona on multiple felony charges. *Doc. 26* at 11. The State of Arizona currently allows State courts to deem an offender a repeat felon for criminal category sentencing when "a person who has been convicted in any court outside the jurisdiction of this state of an offense that *if committed in this state would be punishable as a felony*." ARIZ. REV. STAT. ANN. § 13-703(M) (2010) (emphasis added). As mentioned previously in this brief, Aggravated Assault and Conspiracy are termed felonies in the State of Arizona. The use of Mr. Valenzuela's illegal tribal court convictions to enhance a future sentence is not a far-fetched hypothetical, but remains a real collateral consequence unless this Court grants relief through Section 1303 – the only remedy available to him.

**WHEREFORE**, Petitioner, Alvin Valenzuela, respectfully requests for this Court to:

1. Find that Petitioner Alvin C. Valenzuela's meritorious claims in his Petition for Writ of Habeas Corpus are not moot in general, and also not moot as to Respondent Hecht, specifically.

2. Find that Petitioner Valenzuela is entitled to relief on his Claims, and grant the relief requested in his 1303 Petition and subsequent briefing.

3. In the alternative, should the Court determine that it does not have sufficient information to rule on the Claims presented in the 1303 Petition, it should (a) Grant Review of the Petition; (b) Order the Tohono O'odham Nation to produce the record from the trial court proceeding, and; (c) order an expedited evidentiary hearing on the merits of the Claims listed in the Petition.

4. Order any other relief that this Court deems just and proper.

Respectfully submitted this 24th day of June, 2011.

/s/ Barbara Creel
*Attorney for Petitioner*
UNM Clinical Law Programs
University of New Mexico School of Law
MSC11-6070
1 University of New Mexico
Albuquerque, NM 87131-0001
Telephone: (505) 277-5265
Facsimile: (505) 277-2371
creel@law.unm.edu

/s/Daniel Snyder
*Clinical Law Student for Petitioner*

I HEREBY CERTIFY that
on the 24th day of June, 2011,
I filed the foregoing electronically
through the CM/ECF system which caused
all parties of record to be served via e-mail.
/s/Barbara Creel
*Attorney for Petitioner*